THE PEOPLE ex rel. GEORGE E. CURTIS et al., Appellants, *v.* THE COMMON COUNCIL OF THE CITY OF ROCHESTER, Respondent.

The intent of the provision of the charter of the city of Rochester (§ 50, chap. 262, Laws of 1850, re-enacted § 41, chap. 143, Laws of 1861) conferring upon the common council of that city the power "to require the owners or occupants of any mill-race within the said city to cover the same with bridges or arches," etc., was to impose the expense upon those who need a mill-race for their personal convenience or profit, and the "owners or occupants" are those only who have occasion for the water thus conveyed, for the purpose of propelling the machinery in their mills.

Accordingly *held* (LOTT, Ch. C., and EARL, C., dissenting), where an ordinance directed the construction of a bridge or cover over a mill-race running through the center of a street of that city, that an assessment of the expense upon the owners or occupants of lots adjoining said street, who were not benefited by the race, or authorized to take water therefrom, was illegal and void.

Also *held*, that such assessment could not be sustained upon the ground that it was an improvement of the street, as the work was made neces-

sary by the race, the presence of which was not a benefit to the street as a public thoroughfare, and the expense was justly chargeable to those to whom it was a necessity.

(Argued September 18, 1873 ; decided January term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming the proceedings of the common council of the city of Rochester in reference to bridging or covering a mill-race in that city, and assessing the expense thereof, which were brought up for review by certiorari.

The proceedings in question culminated in an ordinance passed August 21, 1866, which directed the construction of a bridge of white oak, with iron girders, over the mill-race in Water street, from the north line of the old Erie canal aqueduct to a point fifty-five feet north of Mortimer street, and that the expense thereof ($20,800) be assessed on one tier of lots on each side of Water street. The mill-race referred to runs through the center of Water street, nearly its whole length. On each side of this street are buildings occupied for business purposes. On the west side are mills and manufactories operated by water-power taken from the race. The buildings on the east side are used for other purposes, and are not benefited by and have no right to the use of the water of the race.

The relators are some of the owners of premises on the east side of Water street, who were assessed in pursuance of said ordinance.

*Henry R. Selden* for the appellants. The common council was only authorized to charge the expense of covering the mill-race upon the owners or occupants thereof. (§§ 50, 51; chap. 262, Laws 1850 ; re-enacted 1861, chap. 143, §§ 41, 42, 192, 193, 209.)

*W. F. Cogswell* for the respondent. The way in question is a street; as such, its improvement is within the jurisdiction of the common council. (2 Bouv. L. Dict., 488, 551 ; 1 id., 586;

*In re Fitzwater Street,* 4 Serg. & Rawle, 108 ; Charter, City of Rochester, title 7, §§ 161–164, 165, 191–199.) The common council had full power to cause the expense of this improvement to be defrayed in the manner it adopted. (Charter, City of Rochester, title 3, § 41; Laws of 1844, p. 156, § 13; Charter, City of Rochester, title 7, §§ 1, 27–35.)

Reynolds, C. It is not now questioned but that Water street, in the center of which the mill-race in question is located, is one of the public streets of the city of Rochester, and under the jurisdiction of its common council for all municipal purposes.

Among the powers conferred upon that body by the legislature is one " to require the owners or occupants of any mill-race within the said city to cover the same with bridges or arches, to be constructed with such materials as the said common council may direct." (Laws of 1861, p. 280, § 41.) The power thus conferred, obviously was given to enable the common council to subject the owners or occupants of mill-races in Rochester to the expense of covering them with appropriate material for the public convenience or safety. In what manner this may be done we will hereafter consider. The expense of such proceeding was justly charged and chargeable upon the owners or occupants of the mill-races to be covered. A mill-race was of no use to any one save the owner or occupant of a mill requiring water, and, in some sense, it might be regarded as a sort of nuisance to every other person. It is difficult to see how the owners or occupants of property on the east side of Water street are the " owners or occupants " of the mill-race in its center, within the meaning of the act granting the power in question. They have no mills, and want no mill-race. It happens, in this case, that the race is in the center of Water street and we have been asked to decide that the owners on the east side of Water street having, by a common rule of law, title to the center of the street, they were owners of the race-way, within the meaning of the statute imposing upon the " owners or occupants " of

the mill-race the expense of its proper and appropriate covering under the direction of the common council of the city. It is very clear that no such rule can be approved. The intention was to impose the expense of covering the race upon those owners or occupants who needed a mill-race for their personal convenience and profit, and it would be rank injustice to charge any portion of this expense upon parties who had no occasion for its use, in any possible view, and it was never so intended by the legislature. If the mill-race in Water street, as it might well have been, had been located upon the extreme west side of the street, the owners of lots upon the east side would not, upon the most rigorous application of the common-law rule, have been regarded "owners or occupants" of the mill-race. It therefore seems to us very plain that the owners or occupants of a mill-race in Rochester, required to be covered by direction of the common council, are those only who have occasion for the water thus conveyed for the purpose of propelling the machinery in their respective mills.

It may be here said that the ordinance of the common council of Rochester, which has produced this controversy, ordered the construction of "a bridge of white oak, with iron girders, over the mill-race on Water street," and then proceeded to assess the expense upon parties, other than is authorized by law. This action cannot be defended upon the ground that it was a mere improvement of Water street. While the street might be improved by the operation, it was still the covering of a mill-race, and the expense should be paid by the owners of the mills thereby supplied with water Water street, as a public thoroughfare, was in no respect benefited by the presence of a mill-race in its center; and if, indeed, the covering of it was beneficial to the public, the expense was justly chargeable to those persons to whom the mill-race was a necessity and perhaps a source of profit, and there was no authority to assess any portion of the expense thus incurred upon other parties.

It was also provided by the statute that, if the owner or

occupant of any mill-race, ordered to be covered, should neglect, after due admonition, to perform that duty, the common council might order the work to be done at the expense of the city and recover the expenses, etc., from the owner or occupant; or it was competent for the common council to direct " the same to be covered in the same way that other public improvements are directed to be made, and pursuant to the provisions of title seven of this act, so far as the same are applicable." The proceedings in the present case were had under this provision of the law, and the only question is whether, by resorting to this form of proceeding, the expense of covering a mill-race may partially, or possibly in the whole, be charged upon the property of those owners of lots, upon the east side of Water street, who neither want a mill-race nor use it, nor have any benefit from it whatever. They ought not to bear the burden without some semblance of benefit.

It may well be that if, under the fifty-first section of the statute of 1861, the city of Rochester, in the first instance, incurred the expense of covering mill-races, and then sought to recover against the owners or occupants for the amount, various difficult questions might arise. We are not, however, troubled with them in this case. The proceeding under title seven, for a public improvement in the city, if the covering of a mill-race is such, was entirely appropriate; and to it there appears no objection, save that property not legally liable, or in fact benefited, has been charged with some portion of the expense of that improvement.

It seems very clear that, in a case where a mill-race was to be covered, whether in a public street or elsewhere, the common council of Rochester might, after due notice, and a failure of the owner or occupant to respond, do the work on behalf of the city and sue for the amount, or they might direct that it be covered in the same way that other public improvements were (by title seven) directed to be made. While all this was entirely proper, the error was in charging those who were neither owners or occupants of the mill-race with any portion of the expense of covering the same.

Assuming that all the .proceedings of the common council were authorized by law, and even that the covering of the mill-race was a public improvement, it is equally clear that the cost of covering the same is, by the statute, made charge-able upon the owners or occupants who have mills wanting the water the mill-race is intended to supply.

We have not been able to discover that the corporation of the city of Rochester will, in any way, be embarrassed in any effort for public improvement by our holding that, in any form of proceeding the common council may choose to adopt, the expense of covering mill-races in the city is to be charged to those only who run mills and want water.

The judgment of the Supreme Court must be reversed, with costs and assessment vacated.

JOHNSON and GRAY, CC., concur with REYNOLDS, C.; LOTT, Ch. C., and EARL, C., dissent.

Judgment reversed, and judgment accordingly.